UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JOSE RIVERA,

<table>
<tr><td>Plaintiff,</td><td>**COMPLAINT**</td></tr>
</table>

-against-

THE CITY OF NEW YORK; P.O. MUSANTE, TAX
NUMBER 934019; P.O. JOHN DOE #1; the individual
defendants sued individually and in their official capacity,

ECF Case

Jury Trial Demanded

Defendants.

------------------------------------------------------------------------ X

Plaintiff, JOSE RIVERA, by and through his attorneys, the KUSHNER LAW

GROUP, PLLC, states as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights, common law, and tort action in which plaintiff seeks

relief for the violation of plaintiff's rights secured by 42 U.S.C. § 1983; the First, Fourth, Fifth,

and Fourteenth Amendments to the United States Constitution.   The claims arise from an

incident that occurred on or about October 31, 2012.  During the incident defendant City of New

York, and members of the New York City Police Department ("NYPD") subjected plaintiff to,

among other things, false arrest and imprisonment, excessive force, malicious prosecution, and

implementation and continuation of an unlawful municipal policy, practice, and custom.

2.      Defendants' actions were contrary to law, contrary to sound professional

police practice, and contrary to the norms of a civilized society.  This complaint, arising from

these outrageous and unlawful acts, seeks compensatory and punitive damages, costs,

disbursements, and attorneys' fees pursuant to applicable federal civil rights law.

**JURISDICTION & VENUE**

3.      This action is brought pursuant to 42 U.S.C. § 1983, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

4.       Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Queens County, and the City of New York and all defendants are subject to personal jurisdiction in the Eastern District of New York.

**PARTIES**

5.      Plaintiff Jose Rivera is a resident of the State of New York, Queens County.

6.      Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation organized under the laws of the State of New York.

7.      The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court.  At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitution and laws of the United States and the State of New York.

2

8.     Defendant P.O. Musante is a New York City Police Officer, assigned Tax Number 934319, employed with the 110th Precinct, located in Queens, New York or other as yet unknown NYPD assignment who violated plaintiff's rights as described herein.

9.     Defendant P.O. John Doe #1 is a New York City Police Officer, employed with the 110th Precinct, located in Queens, New York or other as yet unknown NYPD assignment who violated plaintiff's rights as described herein.  Defendant P.O. John Doe #1 is sued under a fictitious name because, despite due diligence, plaintiff is unable to identify him by name, rank, or shield number.

10.     The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

11.     On October 31, 2012 the defendants MUSANTE and JOHN DOE broke Mr. Rivera's wrist, discharged mace into his eyes after he was handcuffed, dislocated his shoulder, and lacerated his shin – which required six stitches and has resulted in scar damage.

12.     On October 31, 2012 at approximately 8:40 p.m., at the intersection of 41st Avenue and 72nd Street, the defendant police officers operating from the 110th Precinct, at times acting in concert, and at times acting independently, committed the following illegal acts against the plaintiff.

13.     On October 31, 2012 at approximately 8:40 p.m., Mr. Rivera was at the above-stated location after visiting with his two-year old daughter.  He had stopped at the location because he needed to urinate; he was doing so in a public place.

14.     The defendants MUSANTE and JOHN DOE were driving around in an unmarked police vehicle and observed plaintiff at the location.

3

15.     The defendants MUSANTE and JOHN DOE quickly ran up to plaintiff while he was still urinating.  Startled, he attempted to pull up his pants so as not to expose himself to the officers.

16.     During the arrest of plaintiff, the defendants committed excessive force against him by, among other things, unnecessarily, gratuitously, and maliciously: (1) discharging mace into plaintiff's eyes after he was on the ground and handcuffed; (2) repeatedly striking plaintiff in the right shin with a baton after he was on the ground and handcuffed; (3) dislocating plaintiff's shoulder; and, (4) fracturing plaintiff's left wrist.

17.     During the arrest of plaintiff, the defendants committed excessive force against him by committing the above-described acts.  Those defendants who did not touch him, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

18.     The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff, since plaintiff was unarmed, compliant, and did not resist arrest.

19.     Plaintiff was physically injured as a result of the excessive use of force, and suffered a dislocated shoulder, lacerations to his shin, and a fractured wrist.  Plaintiff was visibly bleeding and noticeably injured.  However, the defendants failed to call an ambulance to the scene to treat plaintiff's injuries.  Instead, plaintiff was taken to the 110th Precinct, located in Queens, New York for arrest processing.

20.     Thereafter plaintiff was taken by ambulance to Elmhurst Hospital Center, located in Queens, New York.  While plaintiff was at Elmhurst Hospital Center, he was treated for his injuries – receiving a splint and cast for his broken wrist, six stitches to his shin, and pain medication.

21. While the plaintiff was at Elmhurst Hospital Center, a Captain visited him from the 110th Precinct who wished to discuss the assault of plaintiff by the defendants.

22. While the plaintiff was at Elmhurst Hospital Center, three officers visited him from the Internal Affairs Bureau of the NYPD who wished to discuss the assault of plaintiff by the defendants.

23. Following treatment at Elmhurst Hospital Center, the plaintiff was transported back to the 110th Precinct for arrest processing before being taken to Queens Central Booking to await arraignment.

24. Plaintiff cooperated with the Captain and the members of the Internal Affairs Bureau and provided statements concerning the assault. Photographs were taken of his injuries by the Captain and/or the members of the Internal Affairs Bureau.

25. While the plaintiff was at the 110th Precinct, Elmhurst Hospital Center, and Queens Central Booking, the defendants, pursuant to a conspiracy, falsely and maliciously told the Queens County District Attorney's Office that Mr. Rivera had committed various crimes, and based on these false allegations, a misdemeanor complaint was filed against plaintiff charging him with a violation of the New York City Health Code and Resisting Arrest under criminal docket number 2012QN058351. The plaintiff was released on his own recognizance after arraignment.

26. The plaintiff was forced to return to Court at two more court appearances before he consented to the Court adjourning the case in contemplation of dismissal. The case was formally dismissed and sealed on July 5, 2013.

27.     The above-stated malicious prosecution was initiated without probable cause to believe that the prosecution would be successful and without regard to plaintiffs' innocence.

28.     The above-stated malicious prosecution was initiated with malice because it was not based upon probable cause.

29.     The above-stated malicious prosecution terminated in plaintiffs' favor when the charges were dismissed and sealed against both plaintiffs.

30.     The above-stated malicious prosecution caused a significant post-arraignment liberty restraint on plaintiff, namely the period of time that Mr. Rivera spent incarcerated awaiting arraignment and the numerous appearances that plaintiff was required to make before the charges were dismissed and sealed.

31.     Upon information and belief, the arrest of the plaintiff was motivated wholly or in part by the individual defendants' need to meet quantitative enforcement "productivity goals" promulgated by the defendant City of New York.

32.     Upon information and belief, the arrest of the plaintiff was motivated wholly or in part by the individual defendants' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of defendant City of New York's police department.

33.     Upon information and belief, the arrest of the plaintiff was motivated wholly or in part by the individual defendants' need to cover up their unlawful conduct in exerting unreasonable force against the plaintiff – i.e. this is clearly a "contempt of cop" and "cover charge" arrest.

34.     The actions of the individual defendants were performed within the scope of their employment and authority, and for whose acts the defendant City is liable under the doctrine of *resondeat superior*.

35.     The actions of the individual defendants violated Mr. Rivera's clearly established rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution and were the direct and proximate cause of the physical and psychological injuries he suffered.

36.     The actions of the individual defendants were intentional, malicious, and in bad faith, thus giving rise to punitive damages as to the individual defendants.

## FIRST CLAIM

### (FALSE ARREST/UNLAWFUL SEARCH AND SEIZURE)

37.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

38.     Defendants falsely arrested plaintiff without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime.

39.     Defendants unlawfully searched plaintiff and seized him after their unlawful search returned no results for contraband or firearms.

40.      Accordingly, defendants are liable to plaintiff for false arrest and unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

7

## SECOND CLAIM

### (42 U.S.C. § 1983 UNREASONABLE AND EXCESSIVE FORCE)

41.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

42.     The individual defendants' use of force upon plaintiff, as described herein, and the individual defendants' failure to intervene, was objectively unreasonable and caused plaintiff pain and injury.

43.     Accordingly, defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## THIRD CLAIM

### (42 U.S.C. § 1983 CONSPIRACY)

44.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

45.     Defendants are liable to plaintiff because they agreed to act in concert to inflict an unconstitutional injury; and committed an overt act done in furtherance of that goal causing damage to plaintiff.

## FOURTH CLAIM

### (42 U.S.C. § 1985 CONSPIRACY)

46.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

47.     Defendants are liable to plaintiff because they conspired against plaintiff based on racial or other invidiously discriminatory animus for the purpose of depriving plaintiff of equal protection of the privileges and immunities under the law, and committed an act in furtherance of the conspiracy, which injured plaintiff.

## FIFTH CLAIM

### (MALICIOUS PROSECUTION UNDER FEDERAL LAW)

48.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

49.     Defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution against plaintiff by knowingly, intentionally, and maliciously providing false statements to prosecutors and/or the criminal court(s), which alleged plaintiff had committed various crimes; and based upon these false statements, prosecutors prosecuted plaintiff until the case against plaintiff was dismissed in their entirety.

50.     The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

51.     The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

52.     The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiff.

## SIXTH CLAIM

### (42 U.S.C. § 1983 AGAINST ALL DEFENDANTS)

53.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

9

54.     All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

55.     All of the aforesaid acts deprived plaintiff of his rights, privileges, and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

56.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

57.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

58.     The defendant police officers and defendant City of New York, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

59.     As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, he was arrested, and he was humiliated, without probable cause.

60.     As a result of the above constitutionally impermissible conduct, plaintiff was caused to suffer violations of his civil rights, severe physical injury, emotional distress, anguish, fear, humiliation, loss of freedom, legal expenses, and damages to his reputation and standing within his community.

10

61.     As a result of defendants' impermissible conduct, plaintiff demands judgment against defendants in a sum of money to be determined at trial.

## SEVENTH CLAIM

### (MUNICIPAL LIABILITY UNDER *MONELL*)

62.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

63.     Prior to October 31, 2012, the City developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of Mr. Rivera's rights.

64.     It was the policy and/or custom of the City to investigate inadequately and improperly civilian complaints of police misconduct.  Instead, acts of brutality were tolerated by the City.  The Internal Affairs Bureau (IAB) and the Civilian Complaint Review Board (CCRB) have substantially failed to investigate, deliberate, and discipline transgressors.  For instance, IAB investigations of brutality rarely lead to administrative trials and when they do, and the charges are somehow sustained, the punishment is minimal, lacking any deterrent effect.

65.     The City has been on notice for more than a generation that brutality is widespread and that particular reforms need to be implemented.  From reform-minded Commissioner Patrick Murphy to the Mollen Commission twenty-five years later, the City has been repeatedly cautioned that a systemic tolerance for brutality flourishes throughout the NYPD.  Twenty years before plaintiff was brutalized, the Mollen Commission report noted, "This tolerance, or willful blindness, extends to supervisors as well.  This is because many supervisors share the perception that nothing is really wrong with a bit of unnecessary force and

because they believe that this is the only way to fight crime today." *Mollen Comm. Report,* at 49.

66.     It was the City's policy and/or custom to supervise and discipline officers inadequately, including the defendant officers, thereby failing to discourage constitutional violations on the part of its police officers.

67.     Police officers of the City of New York have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct of which they are aware, thereby establishing and perpetuating a "code of silence."

68.     This "code of silence" is a custom deeply ingrained in the members of the New York City Police Department so as to constitute the actual policy of the City of New York.

69.     The City has been deliberately indifferent to the need for more or different training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers.  The City has failed to properly sanction or discipline officers who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other New York City police officers, thereby causing and encouraging New York City police officers, including the individual defendant officers in this case, to violate the rights of citizens such as Mr. Rivera.

70.     It is believed that the City has maintained no system or an inadequate system of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers.  This failure to identify and track such officers, including the defendant officers, or to discipline, more closely supervise, or retrain such officers who engage in the "code of silence," causes New York City police officers to believe that they can engage in

12

misconduct, secure in the knowledge that their fellow officers will neither intervene, nor give evidence against them.  These systemic deficiencies include, but are not limited to:

a.   Preparation of investigative reports designed to vindicate the conduct of officers who gave false information about eh misconduct of other officers, or who falsely denied knowledge about misconduct which they were in a position to observe;

b.   Preparation of investigative reports which uncritically rely solely on the word of police officers and which systematically fail to credit testimony of non-police witnesses;

c.   Preparation of investigative reports which omit or ignore factual information and physical evidence which contradict the accounts of police officers;

d.   Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigation;

e.   Failure to have meaningful review of investigative reports by responsible superior officers for accuracy or completeness, including consideration of the conduct of officers who were not actively engaged in the misconduct which was the subject of the investigation, and acceptance of conclusions which are not supported by the evidence or which contradict such evidence; and,

f.   Failure to identify potential "code of silence" violations and maintain accurate records of allegations of such misconduct.

71.   The City, prior to and at the time of this incident, was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers who practice the "code of silence," and was deliberately indifferent to that need.

72.     The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like plaintiff and the need for more or different training and discipline are policies, practices, and customs of the City of New York and have caused police officers, including the officer defendants in this case, to believe that they can violate the rights of citizens with impunity, and that their fellow officers would conceal such conduct, including swearing falsely and committing perjury, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

73.     As a direct and proximate result of the City's deliberate indifference, defendants violated Mr. Rivera's constitutional rights for which he suffered substantial damages.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.     Compensatory damages in an amount to be determined by a jury;

b.     Punitive damages in an amount to be determined by a jury;

c.     Costs, disbursements, and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d.     Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated:     Brooklyn, New York
           October 30, 2015

_____
Michael P. Kushner, Esq.
KUSHNER LAW GROUP, P.L.L.C.
16 Court Street, Suite 2901
Brooklyn, New York 11241
(718) 504-1440
mk@kushlawgroup.com